# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Shahab Kazemzadeh, | Case No.: 2:25-cv-01941-JAD-NJK |
| Petitioner | **Order Granting Preliminary Injunction and Directing Release of Detainee** |
| v. | |
| The United States of America, et al., | [ECF No. 8] |
| Respondents | |

Petitioner Shahab Kazemzadeh is an Iranian citizen who arrived in the United States in 1999 and was ordered removed in 2020. He was released from custody after his removal order became final because Immigration and Customs Enforcement (ICE) agents were unable to secure his removal to Iran. But on June 23, 2025, ICE arrested Kazemzadeh, and he has been detained at the Nevada Southern Detention Center ever since. In October 2025, Kazemzadeh filed a pro se petition for a writ of habeas corpus seeking his release from custody, and about a month later, he filed a motion for a temporary restraining order (TRO) seeking his immediate release pending a decision on the habeas petition. He contends that his prolonged detention and the government's failure to provide notice before effectively revoking his supervision order exceed the government's authority and violate his due-process rights. The court held a hearing on Kazemzadeh's TRO motion on Friday, January 9, 2026.

I convert Kazemzadeh's motion to one for a preliminary injunction, and I grant it. Kazemzadeh has shown a likelihood of success on the merits of his claim that his prolonged detention exceeds the government's statutory authority under the United States Supreme Court's opinion in *Zadvydas v. Davis*[1] and that he will suffer continued irreparable harm if he is not

---

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

1  released.  So I direct his immediate release, subject to reasonable conditions of supervision set

2  forth in 8 U.S.C. § 1231(a)(3).  I do not require that Kazemzadeh post a bond securing his

3  release.

**Background**

5  Petitioner Shahab Kazemzadeh alleges that he was "born in Iran and, through his family,

6  entered the United States and received refugee status based on religious grounds."[2]  Kazemzadeh

7  was convicted of sexual-assault charges in a Utah state court more than twenty years ago.[3]  In

8  March 2020, an immigration judge ordered his removal to Iran, but he "was not removed to Iran

9  at that time due to not having secured a travel document."[4]  Kazemzadeh was released from ICE

10  custody under an order of supervision.  ICE agents arrested him again on June 23, 2025, and he

11  has been in ICE detention at the Nevada Southern Detention Center ever since.

**Discussion**

**A.    This court has jurisdiction to order relief related to the petitioner's habeas petition.**

14  The constitution provides that the writ of habeas corpus is "available to every individual

15  detained in the United States."[5]  That writ permits a person who is in custody to challenge the

16  legality of his detention, and the court has the authority to release the petitioner if it determines

17  that the petitioner is illegally detained.  The court's habeas jurisdiction encompasses a

18  noncitizen's challenge to his detention under the United States's immigration laws.[6]

---

[2] ECF No. 1-1 at ¶ 23.

[3] ECF No. 6-2 at 3.

[4] *Id.*

[5] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[6] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

2

**B.** **This nation's immigration laws permit a noncitizen's detention pending removal, but that detention period should not exceed six months without a significant likelihood of removal in the reasonably foreseeable future.**

    *1.*      *The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or the date the noncitizen is released from non-immigration detention.[7] During that 90-day period, detention is mandatory.[8] The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[9] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[10] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[11]

---

[7] 8 U.S.C. § 1231(a)(1)(B).

[8] 8 U.S.C. § 1231(a)(2)(A).

[9] *Zadvydas*, 533 U.S. at 682.

[10] 8 U.S.C. § 1231(a)(6).

[11] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

**2.      The due-process clause of the U.S. Constitution prohibits the government from indefinitely detaining noncitizens pending removal.**

Section 1231(a)(6) does not limit the length of time that a noncitizen may be held post-removal period.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[12]  To avoid its constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[13]  It determined that six months of post-removal-period detention is presumptively reasonable.[14]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[15]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[16]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[17]

---

[12] *Id.* at 690.

[13] *Id.* at 699.

[14] *Id.* at 701.

[15] *Id.*

[16] *Id.*

[17] *Id.* (cleaned up).

4

**C.    TROs and preliminary injunctions require a showing that the petitioner is likely to succeed on the merits of his claims and will suffer irreparable harm if relief is not granted.**

A temporary restraining order or preliminary injunction is an "extraordinary" remedy "never awarded as of right."[18]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[19]  The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[20]  Under either approach, the starting point is a merits analysis.

The respondents were given notice of Kazemzadeh's TRO motion, as well as an opportunity to respond and to be heard at an in-person hearing.  I thus sua sponte convert the motion into one for a preliminary injunction.[21]  The standard for both forms of relief is the same, the parties were given notice and a hearing, and the nature of the relief granted by this case is more properly addressed by a preliminary injunction.

---

[18] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[19] *Id.* at 20.

[20] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[21] *See* Fed. R. Civ. P. 65 (distinguishing between a temporary-restraining order and a preliminary injunction based on notice and the responding party's ability to be heard).

### 1.    *Kazemzadeh has shown that he is likely to succeed on his prolonged-detention claim.*

Kazemzadeh has shown a likelihood of success on his prolonged-detention claim.  The parties agree that Kazemzadeh has been detained for longer than six months, taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.[22]  So Kazemzadeh bears the initial burden of showing that there are "good reasons to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[23]  Kazemzadeh has been subject to an order of removal for about six years, and ICE has been unable to remove him throughout that period.  Kazemzadeh also recounts that an Iranian official told him he would not be accepted in Iran when he made inquiries in 2020.  I find that Kazemzadeh's allegations are sufficient to show a good reason to believe that he is not likely to be removed in the reasonably foreseeable future.[24]

---

[22] The parties disagree over whether Kazemzadeh's post-removal detention periods, if any, should count toward the *Zadvydas* calculus.  Many courts have found that prior detention periods must be considered; otherwise, the government could simply detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  Because Kazemzadeh's current detention exceeds the six-month threshold and I find that the government has not shown that he will be removed in the reasonably foreseeable future even when considering that his detention has not yet extended too far beyond that presumptively reasonable period, I do not address this issue here.

[23] *Id.* at 701.

[24] The government contends that Kazemzadeh's allegations "are unsupported by competent evidence," like a declaration from a government official, correspondence from the Iranian government, or "documentary proof reflecting ICE's removal efforts or communications with foreign authorities."  ECF No. 13 at 6.  The government fails to explain how Kazemzadeh would have this information, much of which is held in the government's control.  Nor does it cite any binding authority that places this high burden on a petitioner to show a "good reason to believe"

The government does not meaningfully rebut Kazemzadeh's allegations, nor does it provide any evidence showing a significant likelihood of his reasonably foreseeable removal. It merely states without support that "[p]ast difficulties in repatriating Iranian nationals have been overcome by recent diplomatic relations," namely an agreement between Iran and the United States "providing for the return of approximately 400 individuals under final orders of removal."[25] It asserts that DHS has sent two repatriation flights to Iran in the past few months, citing a BBC article reporting that a "second flight" carrying approximately 50 Iranian nationals departed from the United States in early December 2025.[26] But evidence of past deportations does not, standing alone, demonstrate that there is a significant likelihood that this particular petitioner will be deported in the reasonably foreseeable future. The fact that Iran has accepted some deportations does not show that it will continue to do so, nor that it has reconsidered its previous conclusion that Kazemzadeh would not be accepted. So even if Iran has accepted some deportations, the government has failed to provide any indication that it would accept *Kazemzadeh's*.

The government has also failed to adequately show that it is involved in efforts to secure Kazemzadeh's removal. It argued at the hearing that ICE was actively working to secure travel documents for him, citing to one line in a custody-determination document Kazemzadeh received on September 15, 2025. That document informed Kazemzadeh that he was to remain in custody and that ICE "expects to effectuate [his] removal from the United States in the

---

that his removal isn't foreseeable. *See Zadvydas*, 533 U.S. at 701. I find that Kazemzadeh's undisputed statements are sufficient to meet his burden.

[25] ECF No. 13 at 4–5.

[26] *Id.* at 5; ECF No. 13-1.

foreseeable future."[27]  But that conclusory statement, unsupported by concrete facts demonstrating why ICE expects removal to occur, is insufficient to carry the government's burden.  The government has provided no details to show what it has done to obtain travel documents or whether it has had any substantive communications with the Iranian government about the status of Kazemzadeh's application.  And though the government may not need to provide an exact removal date to meet its burden, it has failed to provide *any* estimate about when it may obtain Kazemzadeh's documents.  The government's showing is plainly insufficient.  So I find that Kazemzadeh is likely to succeed on the merits of his prolonged-detention claim.  And because his release is warranted based on this showing alone,[28] I do not address Kazemzadeh's alternative claims for relief.

### 2.    *Kazemzadeh has established irreparable harm.*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"[29]  The Ninth Circuit has also recognized that "unlawful detention certainly constitutes extreme or very serious" injury that "is not compensable in damages."[30]  The government doesn't meaningfully address this factor, arguing only that "showing a possibility of irreparable harm is insufficient" and that his harm "is essentially inherent in detention."[31]  Neither of these arguments makes any sense.  Kazemzadeh has not shown the mere

[27] ECF No. 6-6 at 2.

[28] *Zadvydas*, 533 U.S. at 699–700 (noting that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and holding that, "[i]n that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances").

[29] *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[30] *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (cleaned up).

[31] ECF No. 13 at 8.

1  "possibility" of harm—he is currently suffering irreparable harm by the fact of his continued,

2  likely unlawful detention.  And the harm of *unlawful* detention is not "essentially inherent" in

3  detention.  I find that Kazemzadeh's continued, unlawful deprivation of liberty establishes that

4  he will continue to suffer irreparable harm if he is not released from custody.

5      **3.**  ***The balance of equities and public interest tip sharply in Kazemzadeh's favor.***

6      The last two *Winter* factors merge when the government is the opposing party.[32]

7  Kazemzadeh has shown that the harm of his continued deprivation sharply outweighs the

8  government's minimal hardship caused by releasing him under reasonable conditions of

9  supervision similar to those that he has been subject to for years.  The public's interest in the

10 government's enforcement of its immigration laws does not tip the scales for the government,

11 especially when the petitioner has shown that his immigration detention is likely unlawful.[33]  So

12 I conclude that the balance of equities and public interest tip sharpy in Kazemzadeh's favor.

13     **4.**  ***The court declines to impose a bond requirement.***

14     "Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive

15 relief 'only if the movant gives security in an amount that the court considers proper to pay the

16 costs and damages sustained by the party found to have been wrongfully enjoined or

17 restrained."[34]  "Despite the seemingly mandatory language, Rule 65(c) invests the district court

18 with discretion as to the amount of security required, if any."[35]  Because the government does not

19 provide any argument concerning costs and damages it might sustain, and I am convinced that it

20

21 [32] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

22 [33] *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (recognizing that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue").

23 [34] *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

[35] *Id.* (cleaned up).

will not incur any such damages if it was wrongfully enjoined, I join the growing number of courts that decline to require a bond in cases like this.[36]

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Shahab Kazemzadeh's motion for a temporary restraining order **[ECF No. 8]** is converted to a motion for a preliminary injunction and **is GRANTED. Petitioner Shahab Kazemzadeh must be released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3).** Determining reasonable terms of supervision must not impede the immediate release of the petitioner.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Kazemzadeh's release at least 24 hours before the release is set to occur so that arrangements for his travel can be made.

(2) notice that Kazemzadeh's release was effectuated within three days of this order.

IT IS FURTHER ORDERED that this injunction will remain in effect, absent a successful motion to modify or dissolve it, until this court issues a final decision on the petitioner's habeas petition.

IT IS FURTHER ORDERED that counsel for respondents are directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

---

[36] *See Bunnell v. Noem*, 2025 WL 3707588, at *9 (D. Nev. Dec. 22, 2025) (collecting cases in which "[c]ourts regularly waive security in cases like this one").

IT IS FURTHER ORDERED that **counsel for Kazemzadeh may file a supplemental reply in support of his habeas petition by January 20, 2026**.

_____
U.S. District Judge Jennifer A. Dorsey
January 13, 2026