**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Shahab Kazemzadeh,

    Petitioner

v.

The United States of America, et al.,

    Respondents

Case No.: 2:25-cv-01941-JAD-NJK

**Order Granting Habeas Petition and Closing this Case**

[ECF No. 1-1]

Petitioner Shahab Kazemzadeh is an Iranian citizen who arrived in the United States in 1999 and was ordered removed in 2020.  He was released from custody after his removal order became final because Immigration and Customs Enforcement (ICE) agents were unable to secure his removal to Iran.  But on June 23, 2025, ICE arrested Kazemzadeh and detained him at the Nevada Southern Detention Center.  In October 2025, Kazemzadeh filed a pro se petition for a writ of habeas corpus seeking his release from custody, and about a month later, he filed a motion for a temporary restraining order (TRO) seeking his immediate release pending a decision on the habeas petition.  The court appointed counsel for Kazemzadeh and held a hearing on the TRO motion.  Because Kazemzadeh had good reason to believe he would not be removed in the reasonably foreseeable future and the government failed to bring forth any evidence that efforts to remove him were underway, I converted the TRO to a preliminary injunction, granted it, and ordered Kazemzadeh's immediate release.  The government released him on January 16, 2026.

I now grant Kazemzadeh's habeas petition.  Kazemzadeh was detained for at least six months with no good reason to believe his removal was forthcoming, and the government has failed to present any evidence suggesting otherwise.  So I prohibit the respondents from re-

detaining Kazemzadeh absent a demonstrable change in circumstances regarding ICE's ability to remove him to Iran.  He is to remain released under an order of supervision.

**Background**

Petitioner Shahab Kazemzadeh alleges that he was "born in Iran and, through his family, entered the United States and received refugee status based on religious grounds."[1]  Kazemzadeh was convicted of sexual-assault charges in a Utah state court more than 20 years ago.[2]  In March 2020, an immigration judge ordered his removal to Iran, but he "was not removed to Iran at that time due to not having secured a travel document."[3]  Kazemzadeh was released from ICE custody under an order of supervision.  ICE agents arrested him again on June 23, 2025.

Kazemzadeh filed a pro se habeas petition seeking release from custody on October 9, 2025, arguing that ICE lacked statutory authority to continue detaining him because there was no likelihood that he would be removed in the reasonably foreseeable future.[4]  About a month later Kazemzadeh moved for a TRO directing his immediate release on the same grounds.[5]  After briefing and a hearing, I converted the TRO motion into one for a preliminary injunction and granted it.[6]  ICE released Kazemzadeh on January 16, 2026.[7]

---

[1] ECF No. 1-1 at ¶ 23.

[2] ECF No. 6-2 at 3.

[3] *Id.*

[4] ECF No. 1-1.

[5] ECF Nos. 8, 9.

[6] ECF No. 21.

[7] ECF No. 23.

**Discussion**

**A.    This court has jurisdiction to order relief related to the petitioner's habeas petition.**

The constitution provides that the writ of habeas corpus is "available to every individual detained in the United States."[8]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that the petitioner is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States's immigration laws.[9]

**B.    This nation's immigration laws permit a noncitizen's detention pending removal, but that detention period should not exceed six months without a significant likelihood of removal in the reasonably foreseeable future.**

*1.    The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[10]  During that 90-day period, detention is mandatory.[11]  The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of

---

[8] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[9] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[10] 8 U.S.C. § 1231(a)(1)(B).

[11] 8 U.S.C. § 1231(a)(2)(A).

3

violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[12] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[13]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[14]

### 2. *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) does not limit the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[15]  To avoid its constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[16]  It determined that six months of post-removal-period detention is presumptively reasonable.[17]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[18]  If the noncitizen meets that burden, "the government must respond

---

[12] *Zadvydas*, 533 U.S. at 682.

[13] 8 U.S.C. § 1231(a)(6).

[14] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[15] *Id.* at 690.

[16] *Id.* at 699.

[17] *Id.* at 701.

[18] *Id.*

with evidence sufficient to rebut that showing."[19]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[20]

**C.    Kazemzadeh has shown good reasons to believe he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.**

Kazemzadeh was detained for longer than six months, taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.[21]  So Kazemzadeh bears the initial burden of showing that there are "good reasons to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[22]  To meet that burden, Kazemzadeh notes that he has been subject to an order of removal for about six years, and ICE has been unable to remove him throughout that period.  Kazemzadeh also recounts that an Iranian official told him he would not be accepted in Iran when he made inquiries in 2020.  I find

---

[19] *Id.*

[20] *Id.* (cleaned up).

[21] The parties disagree over whether Kazemzadeh's post-removal detention periods, if any, should count toward the *Zadvydas* calculus.  Many courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  Because Kazemzadeh's current detention exceeds the six-month threshold and I find that the government has not shown that he will be removed in the reasonably foreseeable future even when considering that his detention has not yet extended too far beyond that presumptively reasonable period, I do not address this issue here.

[22] *Id.* at 701.

that Kazemzadeh's allegations are sufficient to show a good reason to believe that he is not likely to be removed in the reasonably foreseeable future.[23]

The government does not meaningfully rebut Kazemzadeh's allegations, nor does it provide any evidence showing a significant likelihood of his reasonably foreseeable removal. It merely states without support that "[p]ast difficulties in repatriating Iranian nationals have been overcome by recent diplomatic relations," namely an agreement between Iran and the United States "providing for the return of approximately 400 individuals under final orders of removal."[24] It asserts that DHS has sent two repatriation flights to Iran in the past few months, relying only on a BBC article reporting that a "second flight" carrying approximately 50 Iranian nationals departed from the United States in early December 2025.[25] But evidence of past deportations does not, standing alone, demonstrate that there is a significant likelihood that this particular petitioner will be deported in the reasonably foreseeable future. The fact that Iran has accepted some deportations does not show that it will continue to do so, nor that it has reconsidered its previous conclusion that Kazemzadeh would not be accepted. So even if Iran

---

[23] The government contends that Kazemzadeh's allegations "are unsupported by competent evidence," like a declaration from a government official, correspondence from the Iranian government, or "documentary proof reflecting ICE's removal efforts or communications with foreign authorities." ECF No. 13 at 6. The government fails to explain how Kazemzadeh would have this information, much of which is held in the government's control. Nor does it cite any binding authority that places this high burden on a petitioner to show a "good reason to believe" that his removal isn't foreseeable. *See Zadvydas*, 533 U.S. at 701. I find that Kazemzadeh's undisputed statements are sufficient to meet his burden. And it must be noted that the government hasn't met this evidentiary burden it advocates either.

[24] ECF No. 13 at 4–5.

[25] *Id.* at 5; ECF No. 13-1.

has accepted some deportations, the government has failed to provide any indication that it would accept *Kazemzadeh's*.[26]

The government has also failed to adequately show that it is involved in efforts to secure Kazemzadeh's removal. It argued at the TRO hearing that ICE was actively working to secure travel documents for him, citing to one line in a custody-determination document Kazemzadeh received on September 15, 2025.[27] That document informed Kazemzadeh that he was to remain in custody and that ICE "expects to effectuate [his] removal from the United States in the foreseeable future."[28] But that conclusory statement, unsupported by concrete facts demonstrating why ICE expects removal to occur, is insufficient to carry the government's burden. The government has provided no details to show what it has done to obtain travel documents or whether it has had any substantive communications with the Iranian government about the status of Kazemzadeh's application. And though the government may not need to provide an exact removal date to meet its burden, it has failed to provide *any* estimate about when it may obtain Kazemzadeh's documents. The government's showing is plainly insufficient. So Kazemzadeh's habeas petition on this ground is granted and I prohibit the federal respondents from re-detaining Kazemzadeh absent proof of changed circumstances demonstrating that his removal to Iran is significantly likely to occur in the reasonably

---

[26] The parties' briefing was submitted before the United States and Iran became engaged in armed conflict. I make no findings concerning the potential impact that development might have on the United States's ability to continue sending repatriation flights to Iran.

[27] Since that hearing, the government has not supplemented the record with any additional evidence showing a likelihood of foreseeable removal.

[28] ECF No. 6-6 at 2.

foreseeable future.  And because his continued release is warranted based on this showing alone,[29] I do not address Kazemzadeh's alternative bases for relief.[30]

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Shahab Kazemzadeh's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 1-1] is GRANTED**.  **The federal respondents are enjoined from re-detaining Shahab Kazemzadeh absent proof of changed circumstances making his removal to Iran reasonably foreseeable.**  The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 1, 2026

---

[29] *Zadvydas*, 533 U.S. at 699–700 (noting that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and holding that, "[i]n that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances").

[30] I also don't address Kazemzadeh's request, made in a supplemental reply, that the court "order ICE [to] reinstate Kazemzadeh's prior" order of supervision.  ECF No. 24 at 7.  The preliminary-injunction order directed ICE to release Kazemzadeh "under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3)."  ECF No. 21 at 10.  Absent any argument or evidence that the current terms of supervision are unlawful, I decline to intervene in ICE's authority to set those terms.